UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
NEXTEL COMMUNICATIONS OF THE MID-      :
ATLANTIC, INC. d/b/a NEXTEL
COMMUNICATIONS                          :

              Plaintiff,         **05 - 1 1 1 6 4 RWZ**

    vs.                           :    Civil Action No.

THE TOWN OF STOUGHTON,                 :
MASSACHUSETTS, THE ZONING BOARD OF ~~MAGISTRATE JUDGE~~
APPEALS OF THE TOWN OF STOUGHTON,      :
MASSACHUSETTS, and ORLANDO                  RECEIPT #_____
DIGIAMPIETRO, STEVEN MITCHELL,         :    AMOUNT $_____
SHERMAN EPRO AND RICHARD ROMANICK,          SUMMONS ISSUED__yes__
in their capacities as Members of the Town of   :    LOCAL RULE 4.1____
Stoughton Zoning Board of Appeals           WAIVER FORM_____
                                        MCF ISSUED_____
                                  :    BY DPTY. CLK._____
              Defendants.              DATE_____

                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff, Nextel Communications of the Mid-Atlantic, Inc., d/b/a Nextel

Communications ("Nextel"), by its attorneys, Devine, Millimet & Branch, P.A., and complains

against the defendants as follows:

1.       Nextel brings this action because of the unreasonable refusal of the Town of

Stoughton, Massachusetts ("Stoughton" or the "Town") and its Zoning Board of Appeals to grant

a special permit and a dimensional variance to allow Nextel and two other providers of wireless

telecommunications service to attach antennas to an existing 144-foot monopole (the "Tower")

and to permit the wireless communications service providers to install and operate associated

equipment within an existing adjacent office building located at 125 Simpson Street, Stoughton,

Massachusetts (the "Property").

2.     The Town's refusal to allow Nextel and its two co-applicants, Bell Atlantic

Mobile of Massachusetts Corporation, LTD d/b/a Verizon Wireless ("Verizon") and Sprint

Spectrum, L.P. d/b/a Sprint PCS, Inc. ("Sprint PCS") (collectively the "Carriers") to locate their

antennas on the existing tower violates Section 704 of the Telecommunications Act of 1996, 42

U.S.C. §337(c)(7)(B) (the "TCA"), in that the refusal does not comply with the TCA's

requirements for a written decision supported by substantial evidence contained in a written

record; effectively prohibits Nextel from providing personal wireless services in a significant

portion of Stoughton; and, unreasonably discriminates against providers of functionally-

equivalent wireless services.  Nextel accordingly requests an injunction directing the Town to

authorize installation of the proposed antennas and associated equipment without further delay.

## PARTIES

3.     Nextel is a corporation organized and existing under the laws of the State of

Delaware and has a regional office at 40 Hartwell Avenue, Lexington, Massachusetts. Nextel is

licensed by the Federal Communications Commission of the United States of America to provide

wireless telecommunications services in various areas, including Massachusetts.

4.     Nextel has been authorized by the owner of the existing Tower, SBA Network

Services, Inc. ("SBA"), to attach antennas to the Tower and to sublease space in the adjacent

office building.  Nextel is aggrieved by the refusal of the Town to allow this installation to

proceed.

5.     The Town is a municipal corporation having its principal place of business at

Town Hall, 10 Pearl Street, Stoughton, Massachusetts.

2

6.    The Zoning Board of Appeals is an agency or instrumentality of the Town of Stoughton, Massachusetts and is the municipal body responsible for the decision which led to this action.

7.    The individual defendants are sued in their capacities as members of the Zoning Board of Appeals.

## JURISDICTION AND VENUE

8.    This civil action arises under those sections of the TCA which provide that any decision denying permission to construct wireless antenna facilities must be set forth in a written decision and "supported by substantial evidence contained in a written record," 47 U.S.C. §332(c)(7)(B)(iii); that local regulation shall not "unreasonably discriminate among providers of functionally equivalent services," 47 U.S.C. 332(c)(7)(B)(i)(I); that local regulation "shall not prohibit or have the effect of prohibiting the provision of personal wireless services," 47 U.S.C. §332(c)(7)(B)(i)(II); and, that "[a]ny person adversely affected by any final action or failure to act by a state or local government or instrumentality thereof that is inconsistent with this paragraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis." 47 U.S.C. §332(c)(7)(B)(v).

9.    Jurisdiction is based on 28 U.S.C. § 1331 which grants this Court original jurisdiction over all civil actions arising under the laws or Constitution of the United States.

10.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1), in that the defendants reside in this district and pursuant to 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred here.

3

## **ALLEGATIONS COMMON TO ALL COUNTS**

11.    The TCA was enacted in July 1996 in order to promote the rapid deployment in the United States of advanced telecommunications systems, including personal wireless services ("PWS"). To that end, the statute provides that local government regulation may not prohibit or have the effect of prohibiting the provision of PWS and imposes other substantive and procedural limits upon the ability of local governments to regulate PWS facilities.

12.    Nextel is a provider of enhanced specialized mobile radio services, a type of personal commercial mobile radio services ("CMRS") which are within the definition of PWS set forth at 47 U.S.C. §332(c)(7)(C)(i). Nextel is licensed by the FCC to provide CMRS in certain markets, and it has certain obligations under that license actually to provide such services.

13.    Nextel's PWS network is entirely digital and employs time division multiple access ("TDMA") technology. The network requires deployment of antennas throughout the area to be covered, which are connected to receivers and transmitters that operate in a limited geographic area known as a "cell." Nextel's portable telephones operate by transmitting and receiving low power radio frequency signals to and from these cell sites. The signals are transferred to and from ground telephone lines and routed to their destinations by sophisticated electronic equipment. The size of the area served by each cell site is dependent on several factors, including the number of antennas used, the height at which the antennas are deployed, the topography of the land, vegetative cover and natural or man-made obstructions in the area. As customers move throughout the service area, the transmission from the portable unit is automatically transferred to the closest Nextel facility without interruption in service, provided that there is overlapping coverage from the cells.

4

14.    In order for Nextel's PWS network to function properly, there must be some overlapping coverage between adjoining cells to allow for the transfer or "hand-off" of calls from one cell to another and to avoid disconnection or "dropped" calls. In other words, Nextel's antennas must be strategically located within the targeted area in order to provide sufficient radio frequency coverage, connectivity with surrounding sites, adequate service and adequate capacity. Nextel's antennas also must be located high enough above ground level to allow transmission (or "propagation") of the radio frequency signals above trees, buildings and natural or man-made other structures that may obstruct the signals. Areas without adequate radio frequency coverage have substandard or no wireless service.

15.    In or about 2004, Nextel determined that it needed to install additional antenna facilities in the Town of Stoughton in the vicinity where the existing Tower is located in order to provide adequate PWS to actual and potential Nextel customers who live, work or travel through this area.

16.    With these network engineering requirements in mind, Nextel concluded that the Tower would be ideal.. Perhaps most important, antennas attached to the existing Tower would not only meet Nextel's engineering requirements, but would avoid the need for a new tower or any other new tall and visually obtrusive structure. SBA had constructed the Tower pursuant to a validly issued building permit. The Tower is located within the Town's industrial zoning district, where wireless service facilities are permitted under the Stoughton Zoning Ordinance (the "Ordinance") upon the issuance of a special permit. Nextel accordingly obtained permission from SBA to attach antennas on the existing Tower and to install and operate associated equipment in the adjacent office building

17.    On or about January 11, 2005, Nextel-- together with  the other Carriers and SBA as co-applicants -- submitted applications for a special permit and for a dimensional variance with the Stoughton Zoning Board of Appeals (the "Applications").

18.    The Zoning Board of Appeals held a single hearing with respect to the Applications in early February 2005.  Four abutters submitted letters in support of the Carriers' Application to the Stoughton Zoning Board of Appeals.

19.    Nextel and the co-applicants presented testimony and other evidence which explained the need for additional antennas on the existing Tower, and also submitted photosimulations which demonstrated that its facility would have minimal visual impact.

20.    In short, both in the Application and during the hearing process, Nextel presented substantial evidence to show that its proposed installation met all requirements under federal, state and local law for the requested special permit and dimensional variance.  Nextel also demonstrated that this was the only feasible alternative for meeting its need to provide the needed coverage.

21.    Despite the minimally intrusive nature of the proposed installation and the absence of any feasible alternatives, and despite the written letters of support by four abutters, the Zoning Board of Appeals voted to deny Nextel's application for a special permit and dimensional variance.  This decision was reduced to writing on May 5, 2005 and filed with the Town Clerk on May 6, 2005 (the "Decision," a copy of which is annexed hereto as Exhibit A).

6

## AS AND FOR A FIRST CAUSE OF ACTION
### VIOLATION OF 47 U.S.C. § 332 (c)(7)(B)(iii)

22.     Nextel repeats, realleges and incorporates herein by reference the allegations of paragraphs 1 through 21 of this Complaint as though fully alleged herein.

23.     The Town's denial of authorization to Nextel to install antennas on the existing Tower was not "in writing and supported by substantial evidence contained in a written record" as required by the TCA, 47 U.S.C. § 332 (c)(7)(B)(iii).

24.     Nextel is accordingly entitled to an injunction directing the Town to grant the special permit and all other permits and approvals necessary for construction of the proposed facilities to proceed.

## AS AND FOR A SECOND CAUSE OF ACTION
### VIOLATION OF 47 U.S.C. § 332 (c)(7)(B)(i)(I)

25.     Nextel repeats, realleges and incorporates herein by reference the allegations of paragraphs 1 through 24 of this Complaint as though fully alleged herein.

26.     The Town has, upon information and belief, approved applications by other "providers of functionally equivalent services" under circumstances which are similar to the circumstances herein. For example, in or about December 1998, the Town permitted AT&T Wireless, to operate a wireless service facility on an existing smokestack located at 2 Canton Street, Stoughton, Massachusetts.

27.     By allowing Nextel's competitors to install antennas on existing structures which are similarly situated to the Tower herein, the Town has unreasonably discriminated against Nextel and the other Carriers.

28.    Nextel accordingly is entitled to an injunction directing the Town to grant the special permit and all other permits and approvals necessary for construction of the proposed facilities to proceed.

## AS AND FOR A THIRD CAUSE OF ACTION
## VIOLATION OF 47 U.S.C. § 332 (c)(7)(B)(i)(I)

29.    Nextel repeats, realleges and incorporates herein by reference the allegations of paragraphs 1 through 28 of this Complaint as though fully alleged herein.

30.    Nextel has a significant gap in its network coverage and capacity which it proposed to close by the least intrusive means, and which it now will be unable to close.

31.    Nextel accordingly is entitled to an injunction directing the Town to issue the special permit, variances and all other permits and approvals necessary for its antenna facility construction to proceed.

**WHEREFORE**, Nextel respectfully requests that this Honorable Court issue the following relief on an expedited basis as required by 47 U.S.C. §332(c)(7)(B)(iv):

A.    Declare that the denial by the Town's Zoning Board of Appeals was not "set forth in writing and supported by substantial evidence contained in a written record" and, therefore, violates the TCA and is invalid and annulled;

B.    Declare that the decision of the Town's Zoning Board of Appeals unreasonably discriminates among providers of functionally equivalent services and, therefore, violates the TCA and is invalid and annulled;

C.    Declare that the Decision has the effect of prohibiting Nextel from providing personal wireless services and therefore violates the TCA and, therefore, is invalid and annulled;

D.    Issue an injunction ordering the Town and its instrumentalities immediately to issue the special permit, dimensional variance and all other approvals and permits necessary to allow installation of the proposed facilities to begin without further delay; and,

E.    Grant such other and further relief as justice and equity may require.

Respectfully submitted,

**NEXTEL COMMUNICATIONS OF THE MID-ATLANTIC INC. d/b/a NEXTEL COMMUNICATIONS**

By its attorneys,

**DEVINE, MILLIMET & BRANCH, PROFESSIONAL ASSOCIATION**

Dated: June 6, 2005          By: _____

Steven E. Grill, Esquire
111 Amherst Street
Manchester, New Hampshire 03101
Telephone: (603) 669-1000
e-mail: sgrill@devinemillimet.com

J:\wdox\docs\clients\10339\74110\M0725294.DOC

9

Case #3770 & 3771
Page 1

RECEIVED

***DENIAL***     05 MAY -6  AM 10: 49

ZONING BOARD OF APPEAL
STOUGHTON, MASSACHUSETTS

THE TOWN CLERK

STATEMENT OF FACT/DECISION

A public hearing was held in the Town Hall, Conference Room B, Room 301, Third Floor, 10 Pearl Street, on **February 3, 2005** at **7:32 P.M.**, on the petition of **SBA Network Services & Bell Atlantic Mobile of Massachusetts Corporation, LTD d/b/a Verizon Wireless Sprint Spectrum L.P d/b/a Sprint PCS & Nextel Communications of the Mid Atlantic represented by SBA & Verizon Wireless through their respective attorneys & representatives, Brown Rudnick Berlack Israels LLP & Robinson & Cole, LLP**, Case # **3770**, for a **Special Permit** under the Town of Stoughton Zoning By-Law of 1970, as amended, **Section V, D, Table of Use Regulations, Retail & Trade, Principal Uses, Item # 21, Communications & television tower**, in order to **install wireless communications to an existing monopole** located at **125 Simpson Street, (Further identified on Assessors Plan 43, Lot 33)** in an **Industrial Zone** in said Stoughton.

A public hearing was held in the Town Hall, Conference Room B, Room 301, Third Floor, 10 Pearl Street, on **February 3, 2005** at **7:33 P.M.** on the petition of **SBA Network Services & Bell Atlantic Mobile of Massachusetts Corporation, LTD d/b/a Verizon Wireless Sprint Spectrum L.P. d/b/a Sprint PCS and Nextel Communications of the Mid Atlantic represented by SBA & Verizon Wireless through their respective representatives and attorneys, Brown Rudnick Berlack Israels LLP & Robinson & Cole LLP**, Case # **3771**, for a **Variance** under the Town of Stoughton Zoning By-Law of 1970, as amended, **Section VI, G, Other: General Dimensional & Density Provisions #3**, in order to **install wireless communications to an existing monopole** located at **125 Simpson Street,  (Further identified on Assessors Plan 43, Lot 33)** in an **Industrial Zone** in said Stoughton.

Present from the Zoning Board of Appeal was:

        Orlando DiGiampietro, Chairman
        Herbert Musmon, Vice Chairman
        Edward F. Coppinger, Secretary
        Steven D. Mitchell
        Sherman L. Epro
        Richard Romanick, Alternate

Also present: David P. Tonis, Building Commissioner/Zoning Officer

The secretary read the petition. Permission was granted to waive the reading of the list of abutters notified in connection with the public hearing.

Mr. DiGiampietro: Please identify yourself.

Atty. Pare: My name is Edward Pare. I am an attorney of Brown, Rudnick, Berlack, Israels. I am here tonight representing SBA Network Services.

Mr. Giaimo: I am representing Verizon Wireless and I am with Robinson & Cole.

Mr. DiGiampietro: Please tell the Board what you would like to do.

Atty. Pare: Mr. Chairman right behind this is a application for a Variance and what I would like to do is certainly use the evidence for both hearings. If the Board would like to open both that is fine with us otherwise we'll ask that the Board incorporate all of the evidence presented in the Special Permit case so you

A True Copy Attest

Town Clerk

Case #3770 & 3771
Page 2

Mr. DiGiampietro: Ed please read the Variance legal ad.

Mr. Coppinger: Fine. (At this time Mr. Coppinger reads the legal ad for case #3771).

Atty. Pare: Mr. Chairman in front of the Board on the table, I have a revised site plan which I filed with the secretary to the Board, just to give everyone a sense of what we're trying to do. I have some smaller versions to hand out. Currently at the site of Horan Oil I believe it is a 140' monopole between the last set of hearings and this hearing we have removed the first lattice tower pole that was there. And the Board had some sort of concerns with the cap that was on the tower, which has since been removed. For the record I would note that we had a pending application. We have since withdrawn that application just prior to filing this one basically for the same proposal. With the tower existing, Verizon wireless is proposing to attach antennas to this. The antenna center line height at 142' on the 142' tower. The second in line would be Nextel communications who is here tonight also to present radio frequency testimony. They would attach at 132' antenna centerline. The third carrier would be sprint spectrum. They will attach at 122' antenna centerline. That is about the extent of the visibility of the pole. It is in an industrial area. Minimal visibility from the town and alike. The pole is there for Mr. Horan's business. We're seeking only to attach to it. In the building this pole almost abuts to…we will be putting in a mezzanine to handle the electronic equipment. Each of the carriers requires an electronic equipment there metal equipment cabinet generally the size of utility cabinets, usually about 4' to 5' high, 2' to 3' wide. Inside the facility there will be space for Nextel, Verizon and sprint. This is basically all the equipment cabinets and the utilities and alike will be located inside. So the only visibility will be the tower and the antennas. With your packets, you have our application form. We have also provided a description of the facility, a support brief which runs through all the Special Permit, Variance standards that we're asking. We're asking for Special Permit first and the alternative if the Board feels we need a Variance due to the boards interpretation that the 1 existing structure per lot or 1 principal structure per lot then we ask for that relief also. We have provided an owners affidavit as far as filing the application, a deed as to the property owner, radio frequency plot maps and radio frequency affidavit by Verizon wireless, the same for Nextel communications and the same for sprint. You have copies of all of the FCC licenses which then demonstrates the carriers rights to provide service in the area. We have an RFR report, a notice from Mass Department of Public Health which indicates that they no longer accepts filings with respect to radio frequency admissions for wireless telecommunication facilities. We have provided a traffic count. Our indications are that somewhere between 20,000 and 22,000 cars travel through the area in the gap that we're experiencing. You have some correspondence of letters of support from some neighboring property owners of the Horan site. Next you have some equipment specifications and what by equipment specifications we mean the interior cabinet for Verizon, sprint and Nextel. We have also provided a photograph of the existing site to demonstrate what is there. As you can see from these plans you can see what we're planning to do and then the plans as revised by this new sheet C2 which was provided this evening. With 3 licensed carriers all experiencing a gap, the tower existing at the site attaching to the existing pole makes a whole heck of a lot of sense. The facility is unmanned. We don't generate traffic. It's not a 24 – 7 thing where personnel have to be available. We don't impose any stain on town systems and town facilities. We use normal average electricity and telephone service, nothing out of the ordinary. What I would like to do is have each of the carriers present their radio frequency engineers and to demonstrate the gap to the Board with exactly how that will be filled. I would like Mike to take over here and introduce Verizon who will go first.

Mr. Giaimo: Thank you with me tonight is Luis Teves who is a radio frequency engineer.

Mr. Teves: Good evening, I am Luis Teves and I am an engineer for Verizon wireless. (At this time Mr. Teves explains the site plan) Green area is what's being covered with existing network. If allowed on map 2 the green area will be covered.

Mr. Giaimo: Tell them about the alternate site.

Mr. Teves: This bridge will cover to help Canton. Power lines are a throw away because they are too low. The site to the south we did a simulation give good coverage for 138. The map on top is the other tower

Case #3770 & 3771
Page 3
location at 1272 Washington Street and there is no gain. (For further information please refer to tab 6 of filing)

Mr. DiGiampietro: Is there a limit of coverage where this is located?

Mr. Giaimo: Do you mean the property coverage?

Mr. DiGiampietro: Yes with the property site.

Mr. Teves: About ½ on West Street and Canton.

Mr. DiGiampietro: Did you check the near the Hanson School?

Mr. Teves: (At this time Mr. Teves discusses the location)

Mr. DiGiampietro: There will be nothing on the antenna to dampen it?

Mr. Teves: Correct.

Mr. Musmon: Regarding the tower located on this, why 2 principal uses on the lot?

Mr. Mitchell: There were no other lots or vacant lots to put a tower on?

Mr. Teves: I am really not the person to speak on that.

Mr. Giaimo: The last thing we want to do is build a tower. We prefer to have co-location opportunities.

Mr. Coppinger: Mr. Mitchell do you know of any suggestions or know of an available site?

Mr. Mitchell: I just wanted to know if they checked other sites. At Cobb Corner Mall there is a cell tower on the power lines, do you know who's on there?

Mr. Teves: T-Mobile and I am not sure who else.

Mr. Vellante: My name is Keith Vellante and I work for sprint. We're located on a site in Sharon we constructed and it's located at the Sharon Country Club. (At this time Mr. Vellante discusses map locations for sprint) The upper left is Lincoln Street in Canton. To the East is 1010 Turnpike Street that is a Verizon tower which sprint has co-located. To the East here is Randolph which there is a sprint pole. This area here is Central Street in Avon and we've co-located on. To the South is the Brockton line and sprint has a 110' pole here. To the West is 1272 Washington Street which sprint is on that which is the south part of the town. This map shows the Sharon Country Club. The green area is sprint coverage and the white area is the gap in service. Route 27 has about 20,000 cars a day. There is a gap on Sumner Street and West Street. The Key is the downtown, route 27 and Pleasant Street.

Mr. DiGiampietro: It's pretty bare in Stoughton. There is a church in Stoughton on Pleasant Street why not there?

Mr. Vellante: If approved this would cover the center of town.

Mr. Mitchell: Did you look into different locations?

Mr. DiGiampietro: The church is higher.

Mr. Mitchell: Did you not look at all locations?

Case #3770 & 3771
Page 4

Mr. Vellante: We have not looked at the church, no.

Mr. Coppinger: Steve maybe you should tell them where it should be.

Mr. Yang: My name is Frank Yang and I represent Nextel. (Please refer to Tab 7 of application. Please see File).

Mr. Mitchell: Did you sir look into every available site?

Mr. Yang: I am really not the person to speak to on that but this is the best solution because its high.

Mr. Coppinger: This is a 2nd principal use.

Mr. Giaimo: Well this is my legal conclusion...

Mr. DiGiampietro: You can present the case anyway you want.

Atty. Pare: The church steeple is not allowed. It's a second principal use. The smokestack has one and now a 2nd principal use.

Mr. Mitchell: The second principal structure has been before us in 1999. Our by-law does not allow for a 2nd principal structure.

Atty. Pare: If that is how you interpret it. Antenna's need relief.

Mr. Mitchell: Then you can't use it.

Mr. Giaimo: But if we got a piece of raw land and built a tower on it you're okay with it.

Mr. Mitchell: Everything needs to be proper.

Mr. DiGiampietro: Why don't you read into record the finding of fact for the special permit.

Mr. Giaimo: Fine. (At this time Mr. Giaimo reads into record the finding of fact. Please see Attachment A).

Atty. Pare: I will read the variance finding of fact. (Please see Attachment B).

Mr. Coppinger: Mr. Chairman I am satisfied with this presentation.

Mr. Giaimo: I don't think we need the variance but if the Board says okay to grant it then we're okay.

Mr. Musmon: If this permit is granted you're going to have 2 principal uses on a lot. So if I lived on a high point I can put a tower in my backyard and say it is 1 use on a lot.

Atty. Pare: If the Board has granted the variance for frontage.

Mr. DiGiampietro: There was a lot created on Turnpike Street to put up a tower but they never did. Tosca Drive wanted that.

Mr. Mitchell: And Page Street.

Atty. Pare: You can't put a tower in your backyard.

Case #3770 & 3771
Page 5
Mr. Musmon: There is one in court now.

Mr. Mitchell: Only his stuff on this tower. It was never to be constructed for telecommunications.

Mr. DiGiampietro: This is not an accessory use to Horan. We could grant it and then Horan would have to move his oil business off.

Mr. Mitchell: The public should not that this was before us before.

Atty. Pare: What else is bothering the Board.

Mr. Romanick: The health issues of the waves.

Atty. Pare: They don't acknowledge them anymore.

Mr. Musmon: You understand about the 2 principal uses on a lot. We support the by-law and the state law.

Mr. Giaimo: We want to help you. You have the ability to vary from the by-law.

Mr. Musmon: We can't grant use variances.

Mr. DiGiampietro: Lets open it up to the audience. Ma'am.

Ms. Frutkoff: Maxine Frutkoff, 23 Howland Terrace. What was the process regarding the antenna on the smokestack.

Mr. Schneider: Terry Schneider, 219 Curtis Avenue. I am here representing the chamber and we need better communications for businesses.

Mr. Musmon: I understand but I don't fell comfortable granting a use variance.

Mr. Barbell: Paul Barbell, 78 Kennedy Road and we need this.

Ms. Ito-Bingamon: My name is Deborah Ito-Bingamon, 84 Water Street. There are dead zones and we need this.

Mr. Giaimo: Are you opposed to a use variance?

Mr. Musmon: If I was comfortable I would vote.

Mr. DiGiampietro: What is the wish of the Board?

Mr. Musmon: I am not ready to vote.

Mr. DiGiampietro: Do you want to take it under advisement?

Mr. Musmon: Yes.

Mr. DiGiampietro: Fine the case is under advisement.

**Under Advisement**

Case #3770 & 3771
Page 6
At the meeting of April 21, 2005 the Board discussed Case #'s 3770 & 3771. Mr. Mitchell brought to the
Boards attention that there are 2 uses on the lot and as soon as it was constructed there was a violation and as
of January 15th, 2002 the applicant had applied for a monopole only for his oil business.

Mr. DiGiampietro stated that SBA is coming in to apply to attach to the monopole. Mr. Mitchell believes that
there are other sites in the area that could cover this gap in coverage. Mr. Romanick confirmed this by stating
there were 4 lots on Canton Street that could be expanded upon but he didn't know who owned the land. Mr.
Mitchell further stated that it could be looked into.

Mr. Epro added that he was under the impression that this monopole was for Horan Oil only.

Mr. DiGiampietro stated he wanted the record to show that the petitioners attorney Mr. Edward Pare
attended the meeting and was told that all 5 members would have to be here to vote and that the attorney
wanted the vote to be taken tonight. He then polled the Board for the Special Permit Case #3770.

Mr. Romanick: Not in favor. .

Mr. Mitchell: Not in favor.

Mr. Epro: Not in favor.

Mr. DiGiampietro: And the Chairman votes no.

(Mr. DiGiampietro polls the Board for the Variance Mr. DiGiampietro, Mr. Mitchell & Mr. Epro vote to
deny. Mr. Romanick abstains).

**REASONS FOR DENIAL CASE #3770 SPECIAL PERMIT & CASE #3771 VARIANCE:**

**THERE ARE 2 PRINCIPAL USES ON THE SAME LOT**

**THERE ARE OTHER VACANT LOTS IN THE AREA WHERE A TOWER COULD BE
CONSTRUCTED TO COVER GAPS IN COVERAGE AND WOULD HAVE ONLY ONE (1)
PRINCIPAL USE ON THE THAT LOT**

**VARIANCE DENIED FOR SAME REASONS AS ABOVE**

**RECORD OF VOTE SPECIAL PERMIT TO DENY: 4 - 0**

Orlando DiGiampietro, Chairman

Sherman L. Epro

Steven D. Mitchell .

Richard Romanick

**RECORD OF VOTE VARIANCE: 3 TO DENY AND 1 ABSTENTION**

Orlando DiGiampietro, Chairman

Steven D. Mitchell

Case #3770 & 3771
Page 7

_____
Sherman L. Epro

**ABSTAINED**

_____
Richard Romanick


FILED IN THE OFFICE OF THE TOWN CLERK, STOUGHTON, MA ON THIS ___6___ DAY OF
May 2005.

# STATEMENT OF SUPPORT

| | |
|---|---|
| Applicants: | SBA Network Services Inc. ("SBA"); |
| | Bell Atlantic Mobile Massachusetts Corporation, LTD d/b/a Verizon Wireless; |
| | Sprint Spectrum L.P. d/b/a Sprint PCS ("Sprint PCS"); and |
| | Nextel Communications of the Mid-Atlantic, Inc. ("Nextel") |
| | |
| Location: | 125 Simpson Street |
| | Stoughton, Massachusetts |

## I.    SPECIAL PERMIT

SBA, Verizon Wireless, Sprint PCS and Nextel (collectively, the "Applicants") respectfully submit this Statement to the Town of Stoughton Zoning Board of Appeals (the "Board") in support of this application for a Special Permit pursuant to Sections V and X(K) of the Town of Stoughton Zoning ByLaw (the "Bylaw") seeking permission to attach antennas to an existing 144' monopole and install associated equipment (the "Facility") within the adjacent building for the purpose of operating wireless telecommunications facilities at 125 Simpson Street, Stoughton, MA (the "Site").

### Section X(K):

In applying for a Special Permit, the Applicants need not demonstrate hardship, since the basis for the action is of general benefit to the Town as a whole. In granting a Special Permit, the Board, with due regard to the nature and conditions of all adjacent structures and uses, and the District within which the same is located, shall find all of the following general conditions to be fulfilled:

(a)  The use requested is listed in Table of Use Regulations as a Special Permit in the District for which application is made;

*The Applicants propose to attach wireless communication antennas to an existing communication tower pursuant to Section V, Retail and Trade Principal Use, Number 21 – Communications and television tower, which is permitted within the Industrial zoning district by Special Permit issued by the Board.*

(b)  The requested use is essential or desirable to the public convenience or welfare;

*As will be demonstrated at the public hearing relating to this application, this Facility fills a substantial gap in coverage with the Town of Stoughton that effects each of the carriers. This Facility allows Verizon Wireless, Sprint PCS and Nextel to link up with neighboring sites thereby closing significant signal coverage gaps in their respective networks. Not only is the signal range from cell sites limited, but each "cell" in the network can only handle a finite number of telephone calls or*

5

*other wireless services. As the number of customers wanting to use a carrier's wireless services in an area increases, more cells must be added to handle the increased volume. If this is not accomplished, calls are dropped or cannot be initiated as customers move through the area.*

*Each of the three carrier applicants considers this site to be an essential part of their coverage plan for service within the Town of Stoughton. Both Sprint PCS and Nextel have attached antennas to the existing tower at 1264 Washington Street, but as shown on their coverage plot maps, each carrier still has significant gaps in their respective coverage within Stoughton. To minimize the visual impact and reduce the number of free-standing wireless communication towers, both Nextel and Sprint PCS focused on identifying existing structures that could be utilized to close the remaining gaps in their coverage. Both Sprint PCS and Nextel identified and evaluated two existing structures that, based upon their height above ground level and location relative to the gap area, might provide the necessary coverage. The first structure was an existing utility stanchion, but that structure was rejected by radio frequency ("RF") engineers for Sprint PCS and Nextel as the structure did not provide the coverage necessary to close the existing significant gaps in coverage for the respective carriers. RF coverage maps for Sprint PCS and Nextel demonstrating that the utility stanchion would not close the existing significant gaps in coverage are attached at Tabs 8 and 7 respectively. The second existing structure that was identified was the existing monopole located at the Site. Similarly, the Site was evaluated and it was determined that attaching antennas at a centerline height of 122' and 132' respectively would provide Sprint PCS and Nextel with the coverage necessary to close their significant gaps in coverage.*

*Similarly, Verizon Wireless also investigated the area identifying existing structures that could be used to close their existing gaps in coverage. Like Sprint PCS and Nextel, Verizon Wireless evaluated the existing utility stanchion and based on the coverage maps submitted with this application, Verizon Wireless' RF engineer determined that the utility stanchion would not provide the coverage necessary to close its significant gap in coverage. Verizon Wireless' RF engineer also evaluated the existing tower at the Site and as shown by the coverage maps submitted with this Application determined that antennas attached at an antenna centerline height of 142' would provide the necessary coverage to close Verizon Wireless' significant gaps in coverage. Verizon Wireless also has submitted coverage plot maps demonstrating that even if Verizon Wireless attached antennas to the tower at 1264 Washington Street, a significant gap in its coverage would remain, necessitating the proposed antenna attachment on the existing tower at the Site.*

*The granting of the Special Permit for this Facility will not be detrimental to the public good and will, in fact, promote additional safety and convenience to the public by providing enhanced means of everyday communications to the residents and businesses in the area as well as improved emergency communications. It has been shown that wireless communications have been very valuable in times of*

*severe weather. In some cases, as in the devastating ice storms in northern New England in recent winters, wireless telephones were the only means of communications for both emergency personnel and non-emergency communications. In many locations Police, Fire, EMS, Hospital, Electric Utilities and Town employees rely on wireless communications to expedite work, reduce response time and handle situations more quickly with wireless telephones. According to published reports, over 100,000 911 calls are made via cellphones on a daily basis in the continental United States. In addition, wireless data services are use by millions of consumers and businesses.*

(c)   The requested use will not create undue traffic congestion, or unduly impair pedestrian safety;

*There will be no change in circulation or traffic patterns nor will the Facility affect pedestrian movement. The Facility is unmanned and will not generate additional traffic. Once constructed, traffic will be limited to one trip per carrier, per month, on average, by maintenance personnel. Therefore, the Facility will not adversely affect surrounding neighbors' use and enjoyment of their property.*

(d)   The requested use will not overload any public water, drainage or sewerage system or any other municipal system to such an extent that the requested use or any developed use in the immediate area or in any other area of the town will be unduly subjected to hazards affecting health, safety, or the general welfare;

*The Facility will not require municipal resources. The Facility will have no effect on water, sewer, DPW, police or fire services and will have no impact on the Stoughton school system.*

(e)   Any special regulations for the use, set forth in Section XI, are fulfilled;

*The Applicants do not propose to remove any sand, gravel, quarry or other earth materials. The antennas would be attached to the existing communications tower and the associated equipment cabinets will be located within the adjacent building within a secured storage area completely screened from view. As such, the additional conditions articulated in Section XI do not apply to the subject application.*

(f)   The requested use will not impair the integrity or character of the District or adjoining zones, nor be detrimental to the health, morals, or welfare.

*The existing communications tower is located within an Industrial zoning district. Verizon Wireless, Sprint PCS and Nextel propose to utilize an existing structure to close the significant gaps in their respective coverage thereby minimizing potential construction and operational impacts.*

7

*The Facility will not produce any noise, dust, smoke or hazardous waste. Neither water nor air quality is affected by this Facility. The Facility does not create any safety or environmental hazards. As demonstrated by the report submitted by Donald L. Haes, Ph.D., CHP, attached at Tab 10, the RFR emission from the Facility will be hundreds of times below the federal standard. Moreover, the RF engineers for Sprint PCS and Nextel have, in their respective Affidavits, confirmed that the RFR emissions from their proposed facilities will comply with applicable Federal standards. There will be no change in circulation or traffic patterns nor will the Facility affect pedestrian movement. The Facility is unmanned and will not generate additional traffic. Once constructed, traffic will be limited to one trip per carrier, per month, on average, by maintenance personnel. Therefore, the Facility will not be detrimental to health, morals or welfare.*

## II.    VARIANCE

With full reservation of all of their rights, the Applicants respectfully submit this Statement of Support of an application, pursuant to Section X(J) of the Bylaw, for a Variance, to the extent it is required, from Section VI(G)(3) that states that "only one principle **structure** shall be permitted on a lot." It is the Applicants' position that no variance from Section VI(G)(3) is required for their use of the Facility.

*The height of the existing monopole, topography of the Site and its location within the narrow search area specified by the respective carriers, will allow each of the carrier applicants to link up with neighboring sites thereby closing significant gaps in the signal coverage of their respective networks. A literal enforcement of the Bylaw would prohibit Verizon Wireless, Sprint PCS and Nextel from filling these coverage gaps. The Applicants have taken all reasonable measures to minimize the impact of the Facility, by utilizing an existing structure and concealing their ancillary ground equipment within the adjacent building. Because it involves the use of a previously approved existing building and structure and will have no adverse impacts on abutters or the community as a whole, the proposed Facility will not substantially derogate from the intent and purpose of the Bylaw.*

*Furthermore, approving the proposed Facility would be consistent with the Town of Stoughton's obligation under the Federal Telecommunications Act of 1996 ("the 1996 Act"), which provides that a municipality not prohibit or have the effect of prohibiting the provision of personal wireless services. The Facility offers an opportunity for the three carrier Applicants to utilize an existing structure to address substantial gaps in the signal coverage of their respective networks in Stoughton. State and Federal courts have consistently upheld the authority of a Town's Zoning Board of Appeals to issues variances under such circumstances in order to address their municipal obligations under the 1996 Act.*

Section X(J)

The Board may authorize a variance for a particular parcel of land or to an existing structure thereon from the terms of this By-Law where, owing to circumstances relating to the soil condition, shape or topography of such land or structure and especially affecting such land or structures but not affecting generally the zoning district in which it is located, a literal enforcement of the provision of this By-Law would involve substantial hardship, financial or otherwise, to the petitioner and that desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of this By-Law.

I. Before any variance is granted, the Board must find all of the following conditions to be present:

(a) Conditions and circumstances are unique to the appellant's lot, structure or building and do not apply to the neighboring lands, structures or buildings in the same District.

*In light of the 1996 Act, the Site is unique and useful to the Applicants due to the height of the existing monopole, topography of the Site, its location within the narrow search area specified by the respective carriers, its availability for the installation of the Facility and the current uses at the Site. By utilizing the existing monopole, Verizon Wireless, Sprint PCS and Nextel can fill significant gaps in their respective networks. Moreover, the existing monopole located on the Site is the only existing structure available to the Applicants that could be utilized to close their respective gaps in coverage, as demonstrated by the evidence submitted with this application. Both Sprint PCS and Nextel currently have attached antennas to the existing tower at 1264 Washington Street, but as shown on their coverage plot maps each carrier still has significant gaps in their respective coverage within Stoughton. Similarly, Verizon Wireless submitted a RF coverage plot map demonstrating that even if Verizon Wireless attached antennas to the tower at 1264 Washington Street, a significant gap in their coverage would remain necessitating the proposed antenna attachment on the existing tower at the Site. Moreover, as demonstrated by the attached RF coverage plot maps, the existing high tension utility poles can not be utilized by any of the carriers to close their respective gaps in coverage as an alternative to the Facility. Lastly, unlike any of the other properties in the immediate area, the Site contains an existing monopole as part of its commercial use. The Applicants note that federal courts have not hesitated to find that decisions which apply traditional special permit or variance criteria may violate the 1996 Act as federal courts have found that the need for closing a significant gap in coverage constitutes a unique circumstance under Massachusetts zoning law when a zoning variance is required.*

(b) Strict application of the provisions of this By-Law would deprive the applicant of reasonable use of the lot, structure or building in a manner equivalent to the use permitted to be made by other owners of their neighboring lands, structures or buildings in the same District.

*Pursuant to their FCC licenses, Verizon Wireless, Sprint PCS and Nextel are empowered to provide personal wireless service to license areas, which include the Town of Stoughton.*

9

*Verizon Wireless radio frequency engineers have determined that, due principally to the topography of land and existing structures in the vicinity of the Site, antennas located 142' above ground level will provide adequate coverage to Verizon Wireless customers within a substantial coverage gap that presently exists in Stoughton. Similarly, according to the best radio frequency technology available to Sprint PCS at this time, radio frequency engineers and specialists have determined that, due principally to the topography of land and existing structures in the vicinity of the Site, 122' above ground level is the minimum height required to ensure adequate coverage to the residents and businesses of Stoughton in accordance with system specifications. Lastly, according to the best radio frequency technology available to Nextel at this time, radio frequency engineers and specialists have determined that, due principally to the topography of land and existing structures in the vicinity of the Site, 132' above ground level is the minimum height required to ensure adequate coverage to the residents and businesses of Stoughton in accordance with system specifications. In short, the existing monopole at the Site is ideally located to address the significant gaps in service coverage for each carrier within this part of the Town of Stoughton.*

(c)  The unique conditions and circumstances are not the result of actions of the applicant taken subsequent to the adoption of this By-Law.

*The existing monopole that the Applicants propose to utilize is used by Horan Oil as part of its ongoing commercial operation at the Site. It is our understanding that the older tower that was formerly used by Horan Oil has been removed, and that the existing monopole is a legally permitted structure at the Site. The Applicants have not created their own hardship at this location, but rather are requesting relief to alleviate a hardship by using the pre-existing structure and building. The existing monopole is the only existing structure of sufficient height that can be utilized by all three carriers to close the respective significant gaps in coverage.*

(d)  Relief, if approved, will not cause substantial detriment to the public good or impair the purposes and intent of this By-Law.

*If approved, the Facility will not cause substantial detriment to the public good or impair the purposes and intent of this Bylaw. In fact, the provision of telecommunications services will inure to the public good by providing enhanced wireless communications services for the residents, visitors and businesses of the Town of Stoughton on both a day-to-day basis as well as during emergencies. Public safety will be enhanced by providing superior quality conversations and data transmission as well as substantially increased capacity to eliminate "busy" emergency calls. The proposed Facility improves emergency communications with police and fire by eliminating dropped and incomplete calls due to weak signals. According to published reports, over 100,000 911 calls are made monthly from cell phones in the Commonwealth of Massachusetts. Finally, consumers will benefit from the increased competition in the provision of telecommunications services.*

*The requested relief will not nullify or substantially derogate from the intent or purpose of the Bylaw as the Bylaw allows the Board to grant the necessary zoning relief, as demonstrated*

10

*above in the Special Permit discussion, for the installation and operation of the proposed
Facility on the existing structure located at the Site. Furthermore, in light of the obligations of
the Town under the 1996 Act, the relief requested is consistent with the intent and purpose of the
Bylaw.*

## SUMMARY

For the foregoing reasons, as well as to satisfy the mandate of the Federal Government to
facilitate competition in the telecommunications industry as set forth in the 1996 Act, the
Applicants respectfully request that the Board grant the requested zoning relief in the form of a
Special Permit and, if necessary, Variance, as well as any other zoning relief that the Board
determines is necessary to authorize the use and construction and equipment installation center
plated by this Application, including but not limited to additional Special Permit and/or Variance
relief. We respectfully submit that the standards for zoning relief as set forth in the Bylaw as
well as the Massachusetts General Laws relating to zoning must be interpreted and applied such
that the decision issued is in conformance with the 1996 Act.

This Application and all supporting materials are submitted with full reservations of each of the
Applicant's rights under all applicable law.

#50205336 v\4 - lacysf  - 2__04l.doc  - 24005/1

11 .

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Nextel Communications of the Mid-Atlantic, Inc. d/b/a Nextel Communications

**DEFENDANTS** The Town of Stoughton, MA, The Town of Stoughton Zoning Board of Appeals, Orlando DiGiampietro, Steven Mitchell, Sherman Epro and Richard Romanick

(b) County of Residence of First Listed Plaintiff  **Middlesex**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  **Norfolk**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Steven E. Grill, Esquire, Devine, Millimet & Branch, P.A.
111 Amherst St., Manchester, NH 03101; (603) 669-1000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Section 704 of the Telecommunications Act of 1996, 47 U.S.C. Section 332
Brief description of cause:
appeal of denial to allow Nextel to install wireless antenna facilities

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE  Rya W. Zobel
DOCKET NUMBER  05-11006-RWZ

DATE  6-6-05
SIGNATURE OF ATTORNEY OF RECORD  Steven E Grill

FOR OFFICE USE ONLY

RECEIPT #_____ AMOUNT_____ APPLYING IFP_____ JUDGE_____ MAG. JUDGE_____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Nextel Communications v. Town of Stoughton, Massachusetts__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

☐ I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

☑ II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   for patent, trademark or copyright cases

☐ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
380, 385, 450, 891.

☐ IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
690, 810, 861-865, 870, 871, 875, 900.

☐ V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
SBA Network Services, Inc. v. Town of Stoughton, 05-11006-RWZ

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
YES ☐   NO ☑

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
YES ☐   NO ☑
If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
YES ☐   NO ☑

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
YES ☐   NO ☑

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
YES ☑   NO ☐

A. If yes, in which division do all of the non-governmental parties reside?
Eastern Division ☑   Central Division ☐   Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
Eastern Division ☐   Central Division ☐   Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   Steven E. Grill, Esquire
ADDRESS   Devine, Millimet & Branch, P.A., 111 Amherst Street, Manchester, NH 03101
TELEPHONE NO.   603-669-1000

(CategoryForm.wpd - 5/2/05)